May it please the Court, I'm Jury Hartzell of the Wake County North Carolina Bar. I appear on behalf of the appellants in case 3857. They are referred to in our papers and have been referred to as North Carolina appellants. And you're the group that there was an argument that there should have been created a subclass here. We contended there should have been created a subclass, but more importantly, Your Honor, we challenged the adequacy of the class representatives because they had no one who possessed the North Carolina borrower's claims. Now this Court sends the case back to Judge Lancaster, which is what you're asking. It looks to me from reading his opinion as it relates to the motion to intervene and as it relates to the viability of the TILA and the HOPA claims that he's done his thorough you want Judge Lancaster to do if the case is sent back to him? Well, first off, Your Honor, the case that we filed in 2001 did not assert any TILA or HOPA claims. We have a case pending in North Carolina that was argued in front of the North Carolina Supreme Court on February 15 of this year. That is the case that Judge Lancaster remanded. We are, frankly, Your Honor, somewhat indifferent to what the Court does in terms of the remand because it is our intent, if the Court disapproves the settlement, disapproves the class, to proceed in North Carolina. We've had an adjudication on behalf of the two named plaintiffs. If the Court sees fit to disapprove the settlement, we would seek to get that case certified and to proceed in North Carolina. Well, you say that the claims, but you still argue in favor of relation back to 2001. I know we're talking about slightly different things, but isn't that your position? No, Your Honor. We're talking about very different things. Mr. Walters is the appellant and the other appellants have urged TILA-HOPA claims. I see. All right. You don't care, obviously, from your perspective. Is that correct? You care in the settlement approved. You want to preserve your claims in the unrelated action. Is that right? That is correct, Your Honor. The action that has been remanded. I understand. Now, there's been a great deal of confusion about the interrelationship or lack of interrelationship between the North Carolina borrower's appeal and the other appeals, but we believe that under this Court's decision in 2005, when it directed the District Court to pay particular attention to TILA-HOPA or other claims, not asserted by class counsel, that that other claims was big enough to embrace us. And if you look at the brief that we filed, our opening brief at pages 9 and 10, you see the references to the adequacy because the class reps, the persons who were approved of class representatives, did not have any claims under North Carolina law and therefore could not argue for the legitimacy of our trouble damages award that we got a judgment on worth about $12,000. So is your argument predominantly adequacy? Our argument is essentially exclusively adequacy. I mean, we have a tag-on argument that he should not have enjoined the prosecution of the case in North Carolina. We have a tag-on argument saying, well, the settlement amount wasn't enough. But for all intents and purposes, our argument is adequacy. And this is what the District Court said when he was dealing with the adequacy challenge. Two sentences, if I may read. There are no absent class members with, quote, viable TILA-HOPA claims for the named representatives to protect. As this was the only basis for any challenge to the adequacy of plaintiffs, we find that they are adequate representatives. This is Joint Consolidated Appendix, page 10500. When was your suit initially filed? September 13th, 2001. And so we had a 2005 decision of our court. You did. As I recall, it was on that panel. You've raised the supposed unique features of North Carolina law subsequent to that 2005 opinion. Is that correct? Correct, Your Honor. Well, how can... Isn't it a little late to say that somebody's not an adequate representative of the class? Once upon a time, the settling parties argued that position. They have abandoned it. We interpreted this court's 2005 opinion as broad enough to permit our challenge. And we set out the reasons in our brief that the language of that opinion is sufficiently broad. In addition, we believe the law generally permits a party to come in and take advantage of an appellate court ruling. And we cite the law as to that matter. Indeed, we thought our arguments were sufficiently persuasive when they were advanced below that it was for that reason that the settling parties no longer advanced that argument to this court. Okay. Now, real quickly, because I've pledged to Mr. Walters in exchange for his help me argue first that I would truly limit myself to seven minutes, we contend the district court's ruling has the following failings when it comes to the North Carolina borrowers. It did not acknowledge our adequacy challenge. It did not acknowledge that our challenge was supported by the North Carolina Attorney General. It did not acknowledge that we had no statute of limitations issue, even though it went to great lengths to address the statute of limitations issue for the Tila Hopa claims. It did not acknowledge that we had no preemption issue. The district court itself held that there was no preemption issue when it remanded our case, since the preemption defense and complete preemption standard is the same. And finally, it did not acknowledge that we had received a judgment in our favor in April and May of 2008 by the North Carolina court to whom the case was assigned. Thank you. Thank you very much, sir. Thank you. Candidate Weld, thank you very much. Mr. Walters. Good afternoon. Fred Walters on behalf of the Missouri, Illinois objectors, the Georgia, Alabama objectors, and the Maryland objectors. For the court's information, other counsel who file separate briefs, the Alabama, Georgia objectors, as well as the Maryland objectors are here and are available should the court have any questions specifically of them. We're here for the same reasons that we were here in 2005. That is the class representatives and the... You're saying not an adequate representative of... are not adequate representatives of the group. That's correct, your honor. We have the same issue now that we did then. And when this case was remanded by Judge Flaubert in 2005, there were specific directions given to the district court, which we have, we filed a long brief about the failings of the district court to follow this... Well, I jumped to Mr. Hartzell with an inept question that I should have directed to you, and let me direct it to you. What would you have Judge Lancaster do on a remand? Judge, we think it ought to be remanded. We think there ought to be an intervention allowed that would permit... Okay, that's step one. You're allowed to intervene. And then... Now, he had what you say is an sort of inappropriate construct to consider the TILA and the HOPA claims, if I understand you correctly. Is that right? He set up sort of an artificial 12B mechanism. That is correct. He did. All right, so it goes back. There's an intervention. There's 12B motions filed. What's Judge Lancaster do that he didn't do before? Well, first of all, the findings that he made, the construct which wasn't appropriate, the legal conclusions that he reached in this particular case are erroneous with respect to relation back, with respect to class action and tolling. So one thing the court has to do, it seems to me, is direct Judge Lancaster to the appropriate complaint, perhaps, for relation back. Is that correct? Well, that's the first thing. That's correct. The November 10, 2003 complaint, which he was using for... That's as far back in his mind, per his opinion, that any of the claims could reach. And even if amended now, if the Davis and Ulrich cases... And I need to explain that this case was MDL'd. Once there's an MDL, the typical procedure is that when you file an amended complaint, the amended complaint typically runs across all the cases in the MDL. That never happened in this case. Does the court also have to make a determination regarding the right of rescission and, in particular, whether that can be equitably tolled? Well, that's one of the decisions, but there are rescission claims that don't require equitable tolling. There is a portion of the class, and that's why the current representatives are inadequate. None of the current representatives are entitled to assert those HOPA rescission claims that are not subject or do not need, if you will, equitable tolling. But that issue you ask will run across some of the other members of the class that will ultimately be determined. But it's too early at the class certification stage to reach those kinds of decisions. That's a merits decision that shouldn't have been reached at this particular point in the progress of this particular case. Well, it may be a merits decision, but it seemed to me that Judge Lancaster said these are hopeless claims under any set of circumstances because of, in some cases, the legal bars or the complaint that was being used for relation back. And it's hard to avoid some merits analysis, isn't it, when you reconsider? No, I don't think it is, Judge. I think what you do is you appoint adequate representatives that can represent those particular people who don't have the conflicts that now exist in the class. Nobody spoke for those people who don't need the equitable tolling, who don't need relation back, if you will. I mean, all those people are unrepresented now. At some point in time, that will be resolved. You're quite correct. So if you go back, one of the things that can happen or should happen, we believe, is the current case, there should be an amended class action complaint that governs all the cases. And in that amended complaint, and we filed one in the Hobson case, which was filed in Alabama, and then MDLed up to Judge Lancaster's court. We filed that after this opinion first came down here, but it's never been ruled. We asserted in that claim, in fact, we asserted from the beginning in the Alabama case, the Hobson case is called in the pleadings here, those T. LaHopa claims. That, once this case was sent back in 2005, there was no class. So there were then at that point in time, the Hobson case was a competing class action, if you will, for certification just as any other class was. Ultimately, you're seeking to be a subclass, is that right? Well, the appropriate thing would probably be to appoint subclasses for the members that have, yes, that would be correct. There would be subclasses that need to be appointed. So that the interests of those who have differing interests are structurally protected through either subclasses or separate counsel. That would be correct, Your Honor. The, what about the timeliness or the mootness of the motion to intervene? Is there still a problem? Is there a problem with that? With Judge Lancaster's ruling? Yes. And, no, no, but with respect to, was your motion timely? Yes. And there's no doubt about that? No. But you waited until several years after it became apparent that the district court was not going to consolidate Hobson, right? No. What we did, we filed the initial, we filed the initial intervention motion in October of 2003, and we sought to intervene before the first settlement that came to this court. But then you sort of let it remain dormant, did you not? No. We let it remain dormant, and actually that was one of the issues that was up here at appeal when Judge Slovita wrote the opinion in 2005. And she indicated at that point in time that that motion was, had been timely filed, at least at that point in time, the motion to intervene. So the case gets sent back in August and September. There was an amendment to the opinion in September, so it's September 2005. It goes back to Judge Lancaster. We meet with Judge Lancaster in, I think it's October or November of 2005. And by that point in time, the Alabama case that we had filed in 2004, it had been MDL'd up to Judge Lancaster's court, so the Hobson case was pending there. And now we had an MDL case that contained six or seven or eight cases. I forgot how many exactly it was. So we sat down at this conference in October, November of 2005, and Judge Lancaster says, or asked, well, what about the motion to intervene? Well, at that point in time, the circumstances had changed. We had an MDL. We believed that there would be a class action complaint that would cover the whole MDL, so we didn't need to intervene because we had the Hobson case, and everything would happen in the Hobson case. Well, that never happened. But you were allowed to participate fully, were you not, in the proceedings post-2005? We were allowed. I used the word fully, but you were allowed to participate actively in the proceedings. We were. As the objectors, we were. All of the objectors were allowed to participate in the... And then you renewed your motion, which I call a dormant motion, to intervene only when the court's decision ultimately didn't go your way, it seems like. Well, actually, we renewed our motion, Judge, before, at the point in time when the October 6, 2006 memorandum, as Judge Lancaster calls it, considering the viability, if you will, of the Tila Hopa claims, and given his reasons why he believed those weren't reasonable, there was no class pending of any sort. There had been nothing done on the MDL about making amended class action complaints, nor was there anything done after he handed that down. There was no reason for us to renew our motion at that point in time because we did not know who was going to be appointed class counsel. There was no class counsel appointed at that point in time. And if you read those cases, it says that, really, until there's a class appointed... He ruled that the Tila Hopa claims would be untimely, and thereafter, you renewed your motion or resurrected your motion to intervene. That's correct. Okay. That's correct. My view is that the absolute time limit for the motion to intervene would have been the end of the opt-out period. It would have been the end of the opt-out period for the settlement you're now considering. And our motion was filed, our renewed motion to intervene, as Judge Zambo has described, it was filed even before the class was preliminarily or conditionally certified with respect to the settlement we're now here about, if you look at the record. So not only were we timely, given how Judge Sloviter described it, the timeliness of when you're supposed to file your motion to intervene, we were long before there was even a class certified so that we knew our client's risk, if you will, the class could be put at risk. And I believe we are absolutely timely with respect to the filing of the intervention motion under Judge Sloviter's opinion. On the relation back issue, what section of Rule 15 are we operating under? Subsection? Well, it depends, Judge... C1C or C1V? Well, if we substitute plaintiffs... Yes. And first of all, let me make clear that we, with respect to substitution of plaintiffs, we don't believe that's an issue here at all. We believe plaintiffs are freely and usually substituted under third circuit law based upon the McCown case and the Haas versus Anderson. When a class representative falls out, the Haas case he fell out because he lacked standing and actually in the McCown case they did also. The court in each of those instances said, class action tolling has told the statute of limitations. So even though were those individuals the new class reps to commence their own suit, when they file and intervene, either substitute or intervene, their actions are absolutely timely and they can be substituted based upon class action tolling under American Pipe and Crown Court. So we don't believe substitution. And then once they are substituted in there, their claims relate back the same as if they were the original plaintiffs. And given these cases were bundled together and were consolidated, anytime there would have been an amendment, which is what there should have been, a MDL-wide class action amendment, that amendment would have related back to each of those cases. Each of the cases that were bundled together in Kessler, and I think there were six consolidated there, the two that are most important here are the Davis case and the Ulrich case. A class-wide amendment or an MDL amendment that applied to all those cases would have related back down the pipeline to each of those back to the very beginning. That is what can still happen with a remand and an intervention. That's what can still happen. Another alternative is we have the Hobson case, class action tolling with respect to the Hobson case also protects, those same dates are protected with respect to Hobson because of American pipe. What's the date you would relate back to? Well, that's one of the facts that's disputed. If you read Judge Sloviter's opinion, the first opinion, I think she assumed without much discussion that it would go all the way back to the beginning in Davis. That's a disputed fact or fact. Well, you derived that from the mention of the, I think the 14,000 potential claims, but elsewhere in the opinion, it seems to say otherwise. There is perhaps a couple of portions. Needs clarification. Yeah, and I know. He's trying to be gentle. I would agree with you. And the issue with respect to how far it relates back is, is one, the Davis case, the initial Davis case was filed in Pennsylvania and it was only a Pennsylvania class. It was then amended. The Davis case was amended and added a national class and that was a little later date. So the question is, we now have a national class. Does the national class, if amended now, relate back to the very first when it was only a Pennsylvania class or to the later date when it became a national class? That's the dispute with respect to Davis. With respect to Ulrich, there is no such dispute because they were a national class in Ulrich from the beginning. But you agree that if the case is remanded, that it may be an exercise in futility unless this court starts to draw some bright lines and establishes, for example, which is the operative complaint for relation back purposes. Do you agree with that? Judge, I have a little trouble hearing. I'm sorry. If we send it back to Judge Lancaster without some guidance and some clarification, particularly in light of what may be confusing in the court's first opinion, if we don't do that, aren't you destined to fail again if Judge Lancaster uses the same set of assumptions that he used in his prior opinion? Yes. If this case is remanded, we absolutely would request some guidance to the trial court as to what particular complaint should be used that it relates back to. Now, we believe that it should be related back in the Davis case to the initial one. And the reason we say that, Judge, and we're aware of the law that says when you expand the class to the national class, it should only go back to that. And we've seen that case. But in this particular case, we have an unusual circumstance where these defendants agreed when jurisdiction was obtained in the fall of 2003, they agreed that it could relate back to the beginning. That was part of it. And that's part of the situation that's a bit unusual about this. So although the typical thought would be it only relates back to when it was a national class in Davis, we believe here that it should relate back to when Davis was first filed, given the agreement and consent of the defendants in this case when the first settlement in the fall of 2003 was engineered and finally approved. But yes, we do believe there should be some guidance in that respect. Is there anything that can save you if the 2003 complaint is the operative one? Well, equitable tolling could save a claim no matter when it is, yes. And we have pled equitable tolling. If equitable tolling works, then it wouldn't matter what operative complaint would be used. You say that there are instances of concealment that you uncovered. If I understood Judge Lancaster's opinion, he seemed to say that there were none, that there were none presented. You say you have them? Yes, we do. Other than obviously the lack of or the concealment itself at the point of the real estate settlement, which you would agree can't be used to prove concealment, or do you agree with that? Well, it depends what you say when you say the real estate settlement. When you have a real estate settlement, there are several documents. The documents, the hope of documents in which the misrepresentation was... I used to do that once upon a time, so I understand what the documents are. There is a hope of disclosure. The hope of disclosure which misdescribes the APR is the operative document where the fraud was operated on our clients. Now, there were additional documents that are not part of the fraud, if you will. One of those would be the HUD-1. And there's a case in Georgia that says the HUD-1, when they list them on the... They disarmed our clients on the HUD-1 because they list on the HUD-1 the settlement charges. One is for a title charge that was never performed for typically $450. So your view is that as of the day of settlement, when presumptively you'd have a HUD-1 that the borrower would see, that's when the equitable tolling commences? That's correct. At that point in time, they have concealed from us, and affirmatively through the HUD-1, concealed from our clients information that would have helped them discover what the fraud was that had been practiced upon them with respect to the reduced APR. Your position is that the overcharging could not have been gleaned from the documents? I'm sorry, did I have a... The overcharging could not have been gleaned from the documents? That is correct. The documents would not have revealed it. It was not... It absolutely was not discoverable by looking at the documents that the borrowers had. There were other documents, for instance, there's what's called the property report. One of the markup reports is one of the fraudulent acts. That property report that was marked up improperly, and that's part of their RESPA claim that they're talking about that the class counsel does, is the only one they pursue. That property report that showed the markup was never provided to the borrowers. They never saw it. Which would have shown the true amount paid. That's right. It would have shown... That's exactly right. It would have shown the true amount was less than what was on the HUD-1. We never saw that. I understand. Didn't even know it existed. There were also some other documents that RSC in its operations with these originators, where they had studies done showing that the fees were excessive and they were concerned about those. Those documents were never provided. But the appellees say that your version of equitable tolling renders the statute, either the statute of limitations or the statute of repose essentially meaningless. What do you say about that? Uh, no. I don't believe it does. Why not? Are you talking about the statute of repose? Either. Because you say that on the day of the settlement, when there was, you say, active concealment via the HUD-1 that creates the TILA or the HOPA violation or one or the other, that you have active concealment at that point that's ongoing. Until it's discovered at a later point in time. And in effect, that obliterates, it seems to me, the statute of limitations once you create the fraud in this case. I don't know if it obliterates it, Judge. That's what equitable tolling does when there's active concealment. And it runs until either due diligence or some other fact, the defrauded party discovers it. But that's not unusual or different than any other. But you say it runs ab initio. It runs from the date of the settlement in this particular case. We do in this particular case. I guess I have three minutes left. Is that on my end? I'd like to reserve a little time for. Good. Did you reserve some time? I did. Eight minutes. Okay. Well, we'll give you the other. We'll give you three more of your minutes. You have three minutes left. We'll tack it on to your eight minutes. Oh, okay. Thank you. All right. Thank you very much, Mr. Walters. Mr. Carlson. Good afternoon, your honors. My name is Bruce Carlson. Judge Lancaster appointed me as class counsel in this matter. And I'm happy to be here today to attempt to defend the propriety of what he did on remand and to defend what I believe now more than ever and always have believed is a pretty darn good settlement. Having been around the last time, we spent quite a bit of time on whether there were potential TILA, HOPA claims in relation to a filing date, and we'll get to that. Well, we'll get to it now. You took the filing date as that of the consolidated amended complaint, which is November of 03. But the latest any class member's loan could have closed was March of 02. And if so, no class member's claim could have been timely under TILA or HOPA. Why would we have spent so much time on that if all the claims were untimely? Your honor, respectfully, I think that the whole limitations issue, while it's one data point for the analysis that occurred on remand, it's a little bit of a red herring. And what I mean by that is this, and this is a quote from the opinion at page 306, quote, whether an individual borrower has a viable TILA or HOPA claim may be determinable by conducting simple arithmetic computations on certain figures obtained from the face of each loan's TILA disclosure statements, close quote. The objectors had represented that fact the first time up on review. And I think that the court took that statement and ultimately concluded, you know, if that's true and there's not really sufficient evidence in the record from the court's perspective to determine whether it is or not, then there is the potential that class counsel was not adequate here by asserting those claims. And there is also the potential that there's an intra-class conflict and that these named plaintiffs cannot represent any putative class members. The problem, the RESPA claims, most of them were also, a lot of them were beyond the class or the statute of limitations. So the question here is, if we're asking you to go back and take a look at them, first of all, you need to find a date. And I don't think we prescribed any date. Well, no party has ever had a TILA or a HOPA claim. No party has ever asserted a TILA, a HOPA claim or a RESPA claim within one year of the date of closing. So what's good for the goose should be good for the gander, right? If you have a settlement that deals with RESPA, should not the settlement also deal with TILA and HOPA? The settlement does ultimately deal with TILA and HOPA, notwithstanding that we felt that those claims were informed for a lot of reasons. Let me suggest that there's one point that all of the stakeholders agree upon. And that is, on average, there's a complete amount at issue on a per loan basis calculated by single damages of approximately $4,700 per loan. And these were second mortgage loans which had an original principal balance of about $35,000 approximately. The debate here has always been about what legal theory do you use to best attempt to recover as much of that money as possible. Now, we ultimately negotiated a modified settlement on remand where we obtained an amount whereby class members would be eligible to receive between $850 some dollars and $1,200 some dollars per loan, which represents between 18.5% and 25% of the amount of single actual damages in dispute. But they're claiming you could do a lot better if you added the TILA and the HOPA claims. And you didn't even, did you amend your pleading to include them? Your Honor, first, I would suggest that the TILA, HOPA claims, they're suggesting that on a per loan basis, there are $415. Did you amend your complaint to add them? At what point? Nobody has ever asserted the TILA, HOPA claims. For a lot, or we didn't assert them for a lot of different reasons. And in the objectors who now invoke those- The primary reason you didn't assert them was what? The primary, there were multiple reasons. As Judge Lancaster suggested in his opinion, there's a limitations issue. And all these are data points- But there are also limitations issues on the RESPA claims too. There were issues, but we felt that the tolling argument was much better with respect to the RESPA claims than it was the TILA claims because unlike the TILA claims, there is active misleading in the HUD-1 with respect to a misidentification of the actual recipient of the fee. That did not occur with respect to the TILA claims. However, more fundamentally, the objectors have always argued that these- Is TILA a strict liability statute? No, it's not in a class context. And that's the fundamental failing of their argument. And their own expert acknowledges that in the class context, and their own expert is Margo Saunders, she submitted an expert report which appears at JCA 2627, paragraph 92, note 60. She acknowledges that in the class context, damages with respect to this HOPA claim are entirely discretionary. They're not automatic strict liability damages as these objectors have always contended. But you would think if you looked at this, I mean, from the beginning, and you were trying to construct a class action complaint here, you would think that you would bring in RESPA, TILA, and HOPA all together. And you didn't. And they're saying that the lead plaintiffs here really don't represent the full class. And I guess the lead plaintiffs didn't really have, you're saying, TILA and HOPA claims anyway, right? I think that the class counsel, and as the court is aware, the issue on remand is adequacy. Class counsel is not required to be omniscient. Class counsel is required to make reasonable and informed decisions. And that's sort of the nub of they're saying you're not an adequate representative of the class. They're suggesting that, and I am suggesting that the record amply demonstrates that that is an incorrect conclusion. The $415 in single damages that are attributable to this TILA-HOPA claim are encompassed by the damages that we recaptured by way of our proposed settlement. To get to the $50,000 per loan that they suggest are obtainable on a strict liability basis, they are dependent upon an exercise of judicial discretion, which we do not think could reasonably have occurred here, particularly when the judge has concluded that these claims are not- Wait a minute. You're losing me. The- There are RESPA claims brought that are too late, but you're arguing equitable tolling. There are TILA and HOPA claims not brought, and to some extent, the court goes off on they're too late. But why wouldn't you argue equitable tolling for those just as you argued equitable tolling, equitable tolling for RESPA? Both of those claims are chasing the same plot of damages, $4,700 per loan. If you look at the HUD-1 here, the entire factual- They're chasing the same pot, but their point is you would get a more greater proportion of that pot if you would have gone after them. We don't think that's true, and notwithstanding the fact that we felt that those claims were infirm on modification, we did in fact obtain value for those claims. Let's concede that there are statute of limitations infirmities, but there are also arguments you made that relate to equitable tolling. Why would they not relate to the TILA and HOPA claims? There are numerous bases upon which we felt that those claims were infirm, the TILA-HOPA claims. It was not only statute of limitations. It was also the fact that the damages which they have always characterized as being strict liability damages are in fact entirely discretionary. Well, let me ask you about that point because you answered Judge Ambrose's question. You said TILA is not strict liability, but it is, isn't it? You're talking about the damages, maybe disparate in different claims. That's what you're trying to say, aren't you? There are many other issues with respect to the TILA-HOPA claims. I understand, but your point seems to be that for individual violations of TILA, you could have different measures of damages, but that's not uncommon, is it, in a class action. Why is that? It's not a question of there being differences with respect to damages in an individual transaction. The whole premise of the possibility of an intra-class conflict here, which is what is a predicate to there being an issue of adequacy, is that these TILA-HOPA claims are worth on a strict liability basis with sufficient amount of money that these named plaintiffs potentially are not representing putative class members who might have been able to assert that claim. My point is that that's a strawman argument because, in fact, you are not entitled to the automatic exemplary damages for that claim that the objectors contend. I understand that, but implicit in the settlement, it seems to me, is that Judge Lancaster found that the TILA and the HOPA claims were not viable. So I don't know how much of the settlement you can really say was attributable to non-existent claims, at least from his standpoint. Well, we negotiated the modification before he ruled on the issue of viability, and we did that because of the uncertainty that had been engendered by this Court's remand decision. I think that there was risk and uncertainty from the defendant's perspective, and we were opportunistic, and we got more money. But that TILA-HOPA, the notion that these TILA-HOPA claims are worth this automatic amount which is exponentially larger than the single damages which are at issue, is a myth. It's always been a myth. Their own expert acknowledged that fact. So if you do the TILA-HOPA claims and you do the relation back analysis, what do you do it under? 15C1C or 15C1B? I think that it's C3, but Mr. Allen, counsel for RFC, is going to speak specifically to that issue. And from my perspective as class counsel, the limitations issue was just one data point which was illustrative of what we felt was the infirmity of the TILA-HOPA claims. And what we're doing as class counsel is we're evaluating risks and we're trying to make the best strategic decisions that we can to recover the most amount of money that we can. And we think that the record demonstrates that our decisions in this instance were well-informed and well-reasoned. And I would... Obviously, the folks on the other side are disagreeing. And... They're disagreeing, Your Honor. But an interesting point of reference is that while they champion these TILA-HOPA claims now, they have filed their own cases based on these transactions. And in the first instance, they never asserted the TILA-HOPA claims themselves. And they asserted state law claims. Well, I think part of it they're saying is from the get-go, you should have done it, you didn't. And therefore, you're not an... Well, you're not an adequate class representative because there are people there with these claims. And your lead plaintiffs, I guess, did not have those claims. Is that correct? Or they did? Nobody had claims that were within one year. My point is that... On RESPA as well. There was a toll... We needed tolling to recover under the RESPA 3. But as I said, there's a significant... And you would have needed tolling to recover under TILA and HOPA. There's an important distinction between the RESPA claims and the TILA claims. If you look at the HUD-1, which is the operative document in the loan materials here, there is a misrepresentation with respect to the identity of the recipient of the origination fees. And we know that because while the HUD-1s indicate that the banks that were participants in these loans were receiving 10 points, approximately, on every loan. These were publicly traded entities. So if you look at the 10Ks that were filed with the SEC, you see a different story being told. And in fact, the banks were only retaining two points and the bulk of that money was being paid to these unidentified mortgage brokerages. So that is active concealment that will support, potentially, an equitable tolling argument. By way of contrast, with respect to the TILA-HOPA claims, you have an identification of the participants in the transaction. Their argument is that there's a markup because there's no debate about the fact that services are being performed. And that issue with respect to the TILA-HOPA claims are title services. There's no debate about the fact that title services are being performed and there is an identification. I think what they were saying is that you weren't really getting a full title. You're getting an internal report as opposed to somebody else giving you what would be the basis for title insurance? The document that you're supposed to receive as a consumer in a residential mortgage loan transaction is the HUD-1. The document that they're talking about would never be provided to a consumer. No, but the entry itself misrepresented the ultimate payees, didn't it? I don't think that that's the relevant test. Why isn't it? Why isn't it? So there's an entry on the HUD-1 that represents the entity that is supposedly getting a portion of the settlement proceeds, but that's not actually where they ended up. Isn't that what the... You know, their argument has changed, frankly. And it's been a moving target. Do I... Do you know? Do I know what, Your Honor? Do you know what they're claiming? Their claim is an understatement of APR. And... Because the... Because the portion that was not disclosed should have been attributed to the APR. Or the portion that was given to a payee not disclosed should have been attributed to the APR. Isn't that right? I don't think that their claim is that there's a misidentification of who's receiving the money. I think that the claim is that the services which were provided were not bona fide and reasonable and therefore not properly excludable from the finance charge and that, hence, there's an understatement of the APR. And, in fact, what we know... Anyway you cut it, doesn't that set up a possible case for equitable tolling? Whether it does or it... I don't think that it does is a short answer. Irrespective of that, that's one data point with respect to those TILA HOPA claims which had many other infirmities. Number one, they don't have the strict liability damages that have always been represented to exist. With respect to being able to prove that those claims can be appropriately certified, it's necessary to deconstruct the loan transaction to ascertain whether, in fact, the services were bona fide and reasonable. And to do that, you have to go into each geographic market and you have to look at what the pricing is in that market because what we do know is we know that services were performed in exchange for those fees. We talk about this in our brief. There has, to my knowledge, never been a class certified on a national basis asserting this claim. From our perspective as class counsel, that was a very significant factor. That in combination with the fact that these damages were discretionary, those were the two primary reasons that we seized upon when we didn't assert those claims because we felt that the rest of the claims were much more compelling and we felt that our credibility was at issue, frankly. My time has expired. Thank you, Your Honor. Thank you very much, Mr. Carson. Mr. Mayor. Thank you, Your Honors. May it please the Court, Daryl May. I represent PNC Bank, but I'm here to speak. Thank you very much. Thank you. But I'm here to speak on behalf of all the settling parties on the North Carolina issue. So I'm directing the Court's attention back to the issues raised by Mr. Hartzell. The record is so voluminous here. I guess the question on the North Carolina issue, if there is unique North Carolina law that allows claims to exist longer, wouldn't that be an appropriate subclass? There is no unique North Carolina law, Your Honor. The North Carolina claim is this. After Mr. Hartzell's clients asked for their claims to be transferred to Judge Lancaster prior to this Court's earlier decision, upon remand, they went back to Judge Lancaster and said, we'd like to be remanded back to state court in North Carolina. But because of the complete preemption doctrine, their claims had originally been filed as usury claims. We will drop usury. We will drop everything but a very straightforward misrepresentation claim. And that's what we'll take back to the Court in North Carolina. Judge Lancaster said, well, if that's what you're going to do, then there's no usury. There's no complete preemption. I have no jurisdiction over you. And he remanded. Well, I'm sorry. I think I needed to lay out that history to get back to this. Part of the problem I had is that it was in January of 08. North Carolina case is what, bumpers? Bumpers. In January of 08, the Court granted the motion to remand back to North Carolina. Is that correct? Correct. And then what, two months later, it enjoined anything going forward in that? No, it enjoined the class certification going forward. When Judge Lancaster remanded these two individuals going back to North Carolina, I don't think he expected that those individuals would promptly set about to interfere with the class settlement. That was not part of what was presented to the Court. But I want to get back to Your Honor's earlier question. And that is, what's unique about North Carolina law? Was the Unfair Trade Practices Act in North Carolina? They were saying, No, it's not unique. It contains, as do others. That was the argument. Is that the act? Yes, yes, yes, yes, Your Honor. And there was a miscitation in the brief about, to the particular site. But it is the Consumer Protection Act in North Carolina. But it's not unique. What Mr. Hartzell says is unique about it is that it contains treble damages. Your Honor, lots of statutes. It gives a four-year statute of limitations, does it not? On that claim, we're, it's, the focus is not, we're not, this is not like the Tila Hopa thing. This is not a statute of limitations. This is. And treble damages. Let's go back to your point. This is the treble damages. Your Honor, there are an array of statutes, both federal and state, including RESPA, including a number of states unfair trade practices law that contains treble damages. So that's not what is unique about what we're here on. What's unique in the North Carolina objector's view, but I have to get out this point, that trebling in the statute and that statute of limitations in that statute, that was in place back when this court had its earlier, had the earlier decision. At that time, Mr. Hartzell advised his clients, and this is in the record at JCA 1230, advised his clients that it was a good settlement and that's before the settlement was enhanced. He advised his client, and at that time, the North Carolina statute had trebling, and at that time, the North Carolina statute had whatever statute of limitations it did. What changed? There's only one thing that changed, and that is that these two individuals went back to state court in North Carolina and on a straightforward misrepresentation claim presented by themselves individually, they got a judgment. Now, there is nothing in the history of class action litigation that says that when people who prosecute individual claims get an individual judgment... The folks in North Carolina are still, with the exception, I guess, of bumpers who opted out. They're still a member of the class, right? Yes, everybody in North Carolina is a member of the class because no one opted out except bumpers. Bumpers. So, if they remain members of the class and there are possibly additional things that they have under their law that would be helpful to them, why not a subclass? What would be the harm? Well, Your Honor, this case has gone on many, many years, and at some point, at some point in time, you have a settlement, and that's the basis upon which... What would be the harm of a subclass? What would be the harm of a subclass? Well, first of all, it would destroy the settlement. Second of all, in any class litigation that's predominantly federal, you will always have state law theories that could have been set forth. It may even be set forth. Judge Sirica's prudential decision was a good example of one in which there were potentially numerous different state law claims, but that didn't mean that there had to be a state representative from each state. And there is nothing unique about North Carolina other than the fact that these individuals did obtain a judgment. But as Judge Sirica said in the prudential case, when talking about factors beyond the Gersh factors, that there are cases out there in which you'll have class actions, and then you'll have single actions going on out there. And maybe after some period of time, after a body develops, then you look at those as data points and see, well, there's been 20 individual trials, and so we can see a trend. And how does that impact on class certification? That's a data point. That doesn't mean that just because an individual takes a case, it could be to a small claims court somewhere in some state and get a higher judgment than you could perhaps get as a class member in a settlement. That does not mean that that destroys a class settlement. And if the court, and any indication by this court would do great damage to settlements of class actions going forward. There's no precedent in the law for that. Mr. May, thank you very much. Thank you, Your Honors. Mr. Allen. Good afternoon. My name is Tom Allen, and I represent Residential Funding Company, which is one of the settling parties and was sued in its capacity as purchaser of the class member's loans. I'm principally going to address some of the statute of limitation issues that have come up in the course of the argument. But at the outset, I want to focus on one thing. Mr. Walter said at the beginning of his argument that we're really addressing here the same issue that we addressed in 2005, that being the issue of adequacy of representation in connection with the district court's approval of a final judgment approving a class action settlement. But there's a very big difference. I thought you were going to address relation back in the time that you have. What is your argument with respect to relation back? On the relation back issue, Your Honor, our position is, first of all, it just doesn't fit. There was no amended complaint that was filed with respect to the operative complaint that's at issue here. And relation back is a doctrine that applies once a pleading is amended. Then the question is... What provision of 15C should we look at? I think the provision that's relevant is 15C-1-C. I just want to make sure I get it right because I know the numberings will change. What would be wrong with 15C-1-B? Because the situation that the objectors are positing is that some... The Sina Hopa claims arose out of the same conduct, transaction, or occurrence as the rest of them. But the situation that the objectors are positing is that some other person will be added to the complaint as a class representative. Because, Your Honor, keep in mind, the reason we went down this whole road of adequacy is because the named plaintiffs are not in a position to assert Tila Hopa claims. And the notion that the Court of Appeals set out before was that there could be some people within the class who would be in a better position to assert these claims. So wait a minute, I'm lost. You're saying if a new plaintiff came in that you're under C-1C? Correct. And that... What if one of the plaintiffs dies? You're telling me and a new plaintiff comes in. Then under C-1C, then you've got a relation back problem? Well, I'm not sure exactly how that particular situation you would analyze it. It can't be. You can't let a class action die. There are two doctrines that are at work here. One is the relation back doctrine. One is class action totaling. If we are talking... Let's deal with relation back. The point is, if the RESPA claims were brought and then the Tila Hopa claims were brought, don't the Tila Hopa claims come out of the same conduct, transaction, et cetera, those things that you see in 15C-1B? Well, there actually are significant differences between the Tila Hopa claims and the RESPA claims. But they arise out of the same transaction. They do arise out of the same lending transaction, but there are different elements that are involved in proving them. Understood. But I'm talking about the generic same transaction. The loan closing. The loan closing. They arise out of the same transaction, but there are very different facts that are involved in establishing the elements. Which is why you have different claims brought. But the point is, if that's the case, isn't there an easy relation back under C-1B? No, there's not. Because the only way and the objectors have laid this out, that the only way they can do it is by getting a new person to come in. Not the existing plaintiffs don't have Tila Hopa claims because they are barred by the statute of limitations. Well, then maybe we end up back with Mr. Walter's main claim that the lead plaintiffs weren't adequate representatives. Well, I think that Mr. Carlson has very adequately responded to that with respect to his strategy that he adopted and the reasons he made the decisions he made in order to try to. So, I mean, it almost sounds like you're telling me we had a practical problem. Our lead plaintiffs didn't have any Tila Hopa claims. And we were already far down the road in terms of having a settlement. Maybe we could juice the settlement a little more and that'll be it. And then that sort of plays into the argument, his argument, and I'm not making any aspersions here, but his argument that there was some collusion here. Your Honor, there absolutely was not any collusion here. I'm not making, but the point is, if it starts putting some smoke to something that he says ultimately leads to a fire beneath it. Well, Your Honor, I do want to respond to the collusion allegations because the objectors tend to make those allegations rather loosely. The modification was definitely negotiated at arm's length. All of the negotiations were with a mediator, former Judge Lewis from this court. What's the old Kissinger quoting Chairman Mao, quoting Confucius, the perception of reality is more important than reality itself. And this might give the perception that something's going on because it's sitting in my position. The one thing I don't get is I understand RESPA claims, but why not Tila and HOPA claims? And then if you're being told to go back and take a look at it, why pick a date of November of 03 with respect to the consolidated amended complaint when in fact you could have gone back to 02? Well, Your Honor, with respect to the district court choosing the November 2003 date, I believe, as Judge Jones mentioned, there was a footnote in the Court of Appeals opinion that could be construed as referring to that date. I don't think that that particular. Yeah, we may have screwed that up. I don't think I'm and I'm not casting aspersions either, Your Honor, but the. I'm telling you, we may have screwed it up. The point is, with respect to Judge Lancaster's decision and using that date, is that is does not require any kind of revisiting because Judge Lancaster went on to consider the other arguments that the objectors were making. The Judge Lancaster went on to consider the relation back issue. Why not allow intervention? Pardon me? Wouldn't intervention have solved this problem? Well, the. First of all, with respect to the. Mr. Waters was talking about how this intervention motion was handled on remand. The objectors withdrew their intervention motion shortly after. Forget about that. So you have an intervention motion. Judge Lancaster denies it. Suppose he had granted it. Wouldn't that have allowed for a full and fair consideration if it had been granted? No, I. In the hope of claims and wouldn't it have solved some of the problems about the which were discoursing such as that you have no plaintiffs who can qualify to make a Tila and hope of claim? No, Your Honor. The Tila hope of claims were fully and fairly considered, although we focused on the statute of limitations argument here. Appellants say not. There was. But there was extensive briefing and that is all in the record. Your Honor. The construct that was created by Judge Lancaster absent intervention. Is that correct? Well, the construct was it was a procedure that the objectors agreed to and that we there were very fulsome briefs filed. The objectors literally as as the court knows in the record, there are hundreds of pages, thousands of pages of briefs and exhibits that address not only the statute of limitations issue, but a number of other issues that and addressing the factual basis for the Tila hope of claims, the certifiability of those claims and and and and a number of other issues. So those were fully and fairly considered on on remand. One particular issue I do want to respond to that Mr. Walter said he said the defendants, I believe he said the defendants or the settling parties agreed that the consolidated amended complaint in the Kessler case could relate back. We never agreed that that complaint would relate back. I believe Mr. Waters is referring to the subject matter jurisdiction issue that was addressed the previous last time around. There wasn't there was an amended complaint that was filed to assert a federal claim in that at that particular docket number, but there was no agreement that that would relate back with respect to any of the other any any any of the other cases. Thank you, Your Honor. Mr. Walters. Your Honor, with Mr. Walters permission, of course, may I have one minute of rebuttal time? Very good. In response to what Mr. May said, I wish to make three points. First, Mr. May rhetorically asked the question, what changed in the North Carolina borrower's perception of the value of the case between 2003 and later? The answer is this court's opinion in 2005. From December of 2005 forward, we consistently said North Carolina subclass, North Carolina unique value. Secondly, as to Mr. May's statement concerning an alleged representation to Judge Lancaster, no such representation was made. I challenge him to find it in the record. The usury claims that were initially advanced by the North Carolina borrowers were stripped out of that case in April of 2003 while the case was with the state court. Finally, in response to the question, what's different about North Carolina? Several things. Four-year statute of limitations, mandatory treble and possibly most significantly, a jurisprudence that is developed such that in this case, in the bumpers case, we were actually awarded treble damages. No need to show reliance. No need to show the other things that sometimes cause unfair trade practices claims to be unsuccessful. Thank you. Thank you. Please record. With respect, I'm not sure that I answered before, but as to the subparagraph of Rule 15, we do believe it's conduct, transaction or occurrence is a basis to relate back. Two, with respect to the strict liability question that was asked, Judge Sloviter referred to these actions as strict liability actions and that they were, they did encompass strict liability in the Enright Community Bank opinion handed down in 2005. Three, with respect to the damages that the court has asked about, and Mr. Carlson suggests that what damages we seek are discretionary. We refer the court to Valleys versus Sky Bank, which was an opinion written in 2009 by Judge Sirica at note 17. Their judge indicated, and it's aptly applies to this case, it says that Section 1635, which are the rescission damages, and I quote, provides the rescission remedy independently, explicitly, and in addition to civil damages under Section 1640. The note continues, similarly, damages for the violation of Section 1639, that's HOPA, are defined independently and explicitly in Section 1640 itself. So, those damages are additive, that is the HOPA, the 1635 rescission remedy is additive to the damages, the statutory damages, and the Valleys case dealt with actual damages and the statute, what's called the statutory or enhanced damages under the statute. The statutory damages under the HOPA remedy are what we are seeking about, and those are mandatory. They are defined and they come as a matter of court. And of course, as with respect to the rescission damages, actually the rescission damages, given the posture of this case, are identical, that is you get, the 1635 says you get what fees you paid and any payments you've made on your loan, you get back. With respect to the tender obligations, and one of the items that they have talked about here is they have suggested, one of the things they've suggested, and the court didn't inquire about it, but I'll talk about it, we speak about it in our brief, is the certifiability, if you will, of rescission damage claims. There's been some cases that say those are personal and not certifiable. This particular case is very unique. 80% plus, 80% plus, according to the respondents here, the appellees of these cases, have already been refinanced. So there is no obligation to tender once there's a refinance. The lender already has whatever they advanced on the loan back. The only thing that would happen on a rescission claim for damages in this case is the borrowers would get back the interest they have paid and the fees they were paid. So there are no independent issues with respect to the rescission damage claim that might be independent or individual in the sense that you might normally think about a rescission claim. I don't, I can stand up here and argue. If the court has any questions, I'll be happy to answer them. But we have no further questions. Thank you, Mr. Walters. The case was very well argued. We'd like to have a transcript made of this oral argument and ask the parties to share in the costs. Thank you very much. Thank you, Ron. Thank you all.